**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION**

FILED
05 AUG 25 AM 11:31
STEPHEN R. LUDWIG, CLERK
U.S. DISTRICT COURT
FOR THE NORTHERN DISTRICT
OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　**Plaintiff,**<br><br>　　v.<br><br>KATHERINE A. MAY<br>a/k/a KATHERINE MAY<br><br><br><br>　　　　　**Defendant** | )<br>)<br>)<br>)<br>)<br>)  CIVIL NO.<br>)<br>)<br>) 1:05CV0308 — **TLS**<br>)<br>)<br>)<br>)<br>)<br>) |

## **C O M P L A I N T**

Comes now plaintiff, United States of America, on behalf of its agency, the Rural Housing Service (formerly known as Farmers Home Administration), its successors and assigns, by Joseph S. Van Bokkelen, United States Attorney for the Northern District of Indiana, and states:

### **JURISDICTION/VENUE**

This Court has jurisdiction pursuant to 28 U.S.C. Section 1345, and venue is properly lodged in this Court.

### **COUNT I (Action for Debt)**

As claim against the defendant, Katherine A. May a/k/a Katherine May, the plaintiff asserts:

1.  On or about the date listed thereon, the defendant, Katherine A. May a/k/a Katherine May, executed and delivered to plaintiff, United States of America, acting through the Farmers

Home Administration, its successors and assigns, United States Department of Agriculture, the following Promissory Note (hereinafter referred to as "the Note") under which she is currently indebted to the United States:

| Designation | Date of Execution | Principal Sum |
|---|---|---|
| Exhibit A | September 4, 1998 | $51,000.00 |

   2.  On or about October 4, 1998, the defendant and the United States of America entered into an Payment Assistance Agreement under which the United States abated the payment of interest on this loan, but provided for the recapture of any interest credit granted "when the property securing the loan is sold, or title to it is transferred or when it is no longer occupied by the Borrower."  A copy of said Payment Assistance Agreement is attached hereto as Exhibit "B".

   3.  Said defendant defaulted and failed to make the payments required by the Note, and/or otherwise defaulted in regard to her obligations to plaintiff under the provisions of the Note.

   4.  All conditions precedent to the assertion of this cause of action against the said defendant, Katherine A. May a/k/a Katherine May, have been satisfied and/or occurred.

   5.  Plaintiff has made the following payments as permitted by the provision of the Note and security instruments and said payments have become part of the indebtedness:

    Taxes & Insurance: $352.83
           Caretaker: $208.00
        Title Search: $275.00
                Fees: $  6.78

6. As of July 1, 2005, the balance of the indebtedness of the defendant and the subsequent interest accrual to the date of judgment is the following with respect to the attached debt instruments:

| Designation | Balance | Per Diem Interest Accrual |
|---|---|---|
| Exhibit A | $51,826.64 | $8.2637 |
| Late Charges | $    39.30 | |
| Interest Credits Recapture | $ 1,238.64 | |

**WHEREFORE**, plaintiff respectfully prays that the Court:

A. Enter judgment **in personam** in favor of the plaintiff and against the defendant, Katherine A. May a/k/a Katherine May, individually, in the principal amount of $48,619.69 with interest thereon through July 1, 2005, in the sum of $3,206.95, plus interest at the rate of $8.2637 per day from July 2, 2005, plus late charges of $39.30 until the date of entry of judgment, plus such further costs and expenses as may be incurred to the date of judgment, and all other costs herein, without relief from valuation or appraisement laws.

B. Enter judgment **in rem** in favor of the plaintiff and against the defendant, Katherine A. May a/k/a Katherine May, individually, for interest credit recapture in the amount of $1,238.64, through July 1, 2005, plus such further costs and expenses as may be incurred to the date of judgment, and all other costs herein, without relief from valuation or appraisement laws.

C. Provide the plaintiff with such other and further relief as is just and proper in the premises.

### COUNT II (Action for Mortgage Foreclosure)

As claim against the defendant, Katherine A. May a/k/a Katherine May, the plaintiff asserts:

1. To secure the indebtedness evidenced by Exhibit "A", the defendant, Katherine A. May a/k/a Katherine May, executed and delivered to plaintiff, United States of America, acting through the Farmers Home Administration, its successors and assigns, United States Department of Agriculture, a Real Estate Mortgage (hereinafter referred to as "the Mortgage") dated September 4, 1998, on certain real estate described as follows:

> Situated in the State of Indiana, County of Jay.
>
> Lot Fifty-six (56) in Haynes Addition to the town, now City of Portland, Indiana. Also, the North one-half (1/2) of alley located to the south of and adjacent to said Lot Fifty-six (56). Subject to all visible and/or recorded roadways, easements, rights of way, restrictions, reservations, condition and covenants.
>
> Commonly known as : 405 West North Street
>                     Portland, In   47371

The Mortgage was duly recorded on September 4, 1998, in the Office of the Recorder of Jay County. A true and accurate copy of the Mortgage is attached hereto, as Exhibit "C".

2. Said defendant defaulted and failed to make the payments required by the Note, and/or otherwise defaulted in regard to her obligations to plaintiff under the provisions of the Note and/or Mortgage and the entire indebtedness of the defendant is now due.

3. All conditions precedent to the assertion of this cause of action against the said defendant has been satisfied and/or has occurred.

4. Jay County, Indiana may claim to have liens on the subject real estate in regard to real property taxes either delinquent or not yet due and payable -- or both; however, because said liens are not subject to foreclosure in this suit, Jay County has not been joined in this suit, and the real estate shall remain subject to said liens subsequent to the foreclosure sought herein.

5. The City of Portland, Indiana may claim to have liens on the subject real estate in regard to assessed delinquent municipal sewer obligations; however, because said liens are not subject to foreclosure in this suit, that entity has not been joined in this suit, and the real estate shall remain subject to said liens subsequent to the foreclosure sought herein.

**WHEREFORE**, plaintiff respectfully prays that the Court:

A. Declare plaintiff's Mortgage to be a valid, first and subsisting lien on the real estate superior to all claims, liens or interests asserted or which may be asserted against the real estate by the named defendant, Katherine A. May a/k/a Katherine May.

B. Enter an order foreclosing the Mortgage of plaintiff on the real estate and foreclosing and barring all of the defendant's equity of redemption and interest in the real estate and directing the sale of the real estate pursuant to applicable law in order to pay the judgment of plaintiff, with the proceeds of said sale to be first applied to the indebtedness of the plaintiff secured by the Mortgage hereby foreclosed, and with any then-remaining overplus paid to the Clerk of the Court to be disposed of as the Court shall direct;

C. Provide the plaintiff with such other and further relief as is just and proper in the premises.

Respectfully submitted,

**JOSEPH S. VAN BOKKELEN**
UNITED STATES ATTORNEY

By: _____
**DEBORAH M. LEONARD**
Assistant United States Attorney
E. Ross Adair Federal Bldg.
U.S. Courthouse
1300 South Harrison Street
Room 3128
Fort Wayne, Indiana  46802
Telephone Number:  (260) 422-2595
Facsimile:  (260) 426-1616
Internet Address:
deborah.leonard@usdoj.gov

6

USDA-RHS
Form FmHA 1940-16
(Rev. 10-96)

# PROMISSORY NOTE

Type of Loan SECTION 502                                         Loan No.

Date: September 04, 1998

_____
(Property Address)

__Portland__ , __Jay__ , __Indiana__
(City or Town)   (County)   (State)

BORROWER'S PROMISE TO PAY. In return for a loan that I have received, I promise to pay to the order of the United States of America, acting through the Rural Housing Service (and its successors)("Government") $ __51,000.00__ (this amount is called "principal"), plus interest.

INTEREST. Interest will be charged on the unpaid principal until the full amount of the principal has been paid. I will pay interest at a yearly rate of __6.250__ %. The interest rate required by this section is the rate I will pay both before and after any default described below.

PAYMENTS. I agree to pay principal and interest using one of two alternatives indicated below:

☐ I. Principal and interest payments shall be temporarily deferred. The interest accrued to _____ , _____ shall be added to the principal. The new principal and later accrued interest shall be payable in _____ regular amortized installments on the date indicated in the box below. I authorize the Government to enter the amount of such new principal here: $_____ , and the amount of such regular installments in the box below when such amounts have been determined. I agree to pay principal and interest in installments as indicated in the box below.

☒ II. Payments shall not be deferred. I agree to pay principal and interest in __396__ installments as indicated in the box below.

> I will pay principal and interest by making a payment every month.
> I will make my monthly payment on the __4th__ day of each month beginning on __October 04__, __1998__ and continuing for __395__ months. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this note. My monthly payments will be applied to interest before principal. If on __September 04 2031__, I still owe amounts under this note, I will pay those amounts in full on that date, which is called the "maturity date."
> My monthly payment will be $ __304.56__ . I will make my monthly payment at __the post office address noted on my billing statement__ or a different place if required by the Government.

PRINCIPAL ADVANCES. If the entire principal amount of the loan is not advanced at the time of loan closing, the unadvanced balance of the loan will be advanced at my request provided the Government agrees to the advance. The Government must make the advance provided the advance is requested for an authorized purpose. Interest shall accrue on the amount of each advance beginning on the date of the advance as shown in the Record of Advances below. I authorize the Government to enter the amount and date of such advance on the Record of Advances.

HOUSING ACT OF 1949. This promissory note is made pursuant to title V of the Housing Act of 1949. It is for the type of loan indicated in the "Type of Loan" block at the top of this note. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

1

REDACTIONS PURSUANT TO
LOCAL RULE 5.2.



RECEIVED SEP - 8 1998

**EXHIBIT A**

LATE CHARGES. If the Government has not received the full amount of any monthly payment by the end of 15 days after the date it is due, I will pay a late charge. The amount of the charge will be 4.000 percent of my overdue payment of principal and interest. I will pay this charge promptly, but only once on each late payment.

BORROWER'S RIGHT TO PREPAY. I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Government in writing that I am making a prepayment.

I may make a full prepayment or partial prepayment without paying any prepayment charge. The Government will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Government agrees in writing to those changes. Prepayments will be applied to my loan in accordance with the Government's regulations and accounting procedures in effect on the date of receipt of the payment.

ASSIGNMENT OF NOTE. I understand and agree that the Government may at any time assign this note without my consent. If the Government assigns the note I will make my payments to the assignee of the note and in such case the term "Government" will mean the assignee.

CREDIT ELSEWHERE CERTIFICATION. I certify to the Government that I am unable to obtain sufficient credit from other sources at reasonable rates and terms for the purposes for which the Government is giving me this loan.

USE CERTIFICATION. I certify to the Government that the funds I am borrowing from the Government will only be used for purposes authorized by the Government.

LEASE OR SALE OF PROPERTY. If the property constructed, improved, purchased, or refinanced with this loan is (1) leased or rented with an option to purchase, (2) leased or rented without option to purchase for 3 years or longer, or (3) is sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare the entire remaining unpaid balance of the loan immediately due and payable. If this happens, I will have to immediately pay off the entire loan.

REQUIREMENT TO REFINANCE WITH PRIVATE CREDIT. I agree to periodically provide the Government with information the Government requests about my financial situation. If the Government determines that I can get a loan from a responsible cooperative or private credit source, such as a bank or a credit union, at reasonable rates and terms for similar purposes as this loan, at the Government's request, I will apply for and accept a loan in a sufficient amount to pay this note in full. This requirement does not apply to any cosigner who signed this note pursuant to section 502 of the Housing Act of 1949 to compensate for my lack of repayment ability.

SUBSIDY REPAYMENT AGREEMENT. I agree to the repayment (recapture) of subsidy granted in the form of payment assistance under the Government's regulations.

CREDIT SALE TO NONPROGRAM BORROWER. The provisions of the paragraphs entitled "Credit Elsewhere Certification" and "Requirement to Refinance with Private Credit" do not apply if this loan is classified as a nonprogram loan pursuant to section 502 of the Housing Act of 1949.

DEFAULT. If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default the Government may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Government may require me to immediately pay the full amount of the unpaid principal, all the interest that I owe, and any late charges. Interest will continue to accrue on past due principal and interest. Even if, at a time when I am in default, the Government does not require me to pay immediately as describe in the preceding sentence, the Government will still have the right to do so if I am in default at a later date. If the Government has required me to immediately pay in full as described above, the Government will have the right to be paid back by me for all of its costs and expenses in enforcing this promissory note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

2

Account #

NOTICES. Unless applicable law requires a different method, any notice that must be given to me under this note will be given by delivering it or by mailing it by first class mail to me at the property address listed above or at a different address if I give the Government a notice of my different address. Any notice that must be given to the Government will be given by mailing it by first class mail to the Government at USDA / Rural Housing Service, c/o Customer Service Branch, P.O. Box 66889, St. Louis, MO 63166 , or at a different address if I am given a notice of that different address.

OBLIGATIONS OF PERSONS UNDER THIS NOTE. If more than one person signs this note, each person is fully and personally obligated to keep all of the promises made in this note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this note is also obligated to do these things. The Government may enforce its rights under this note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this note. The term "Borrower" shall refer to each person signing this note.

WAIVERS. I and any other person who has obligations under this note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Government to demand payment of amounts due. "Notice of dishonor" means the right to require the Government to give notice to other persons that amounts due have not been paid.

**WARNING: Failure to fully disclose accurate and truthful financial information in connection with my loan application may result in the termination of program assistance currently being received, and the denial of future federal assistance under the Department of Agriculture's Debarment regulations, 7 C.F.R. part 3017.**

_Katherine A. May_____ Seal     _____ Seal
Borrower                                         Borrower

_____ Seal              _____ Seal
Borrower                                         Borrower

| RECORD OF ADVANCES |||||| 
|---|---|---|---|---|---|
| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
| (1) $ | | (8) $ | | (15) $ | |
| (2) $ | | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | | TOTAL $ | |

Account #:

3

```
FORM RECD 1944-14                                           FORM APPROVED
              UNITED STATES DEPARTMENT OF AGRICULTURE    OMB NO. 0575-0172
                         RURAL HOUSING SERVICE
         PAYMENT ASSISTANCE/DEFERRED MORTGAGE ASSISTANCE AGREEMENT
         ----------------------------------------------------------
  EFFECTIVE: 10/04/98       PAYMENT PLAN: MONTHLY         AGRMT TYPE: NEW

   ACCOUNT     NOTE       NOTE      MON INSTLMNT   MONTHLY         MONTHLY
   NUMBER      DATE      AMOUNT     AT NOTE RATE   PAYMENT    PAYMENT ASSISTANCE
             09/04/98   51,000.00      304.56      242.04           62.52
```

1. THIS AGREEMENT BETWEEN THE UNITED STATES OF AMERICA, ACTING THROUGH THE RURAL HOUSING SERVICE (RHS) PURSUANT TO SECTION 521 OF THE HOUSING ACT OF 1949, (CALLED "THE GOVERNMENT") AND THE BORROWER WHOSE NAME APPEARS BELOW (CALLED "THE BORROWER") SUPPLEMENTS PROMISSORY NOTES OR ASSUMPTION AGREEMENTS (CALLED "THE NOTE" WHETHER ONE OR MORE) FROM BORROWER TO THE GOVERNMENT AS DESCRIBED ABOVE.

2. ADJUSTED FAMILY INCOME LIMITS FOR JAY COUNTY                AS OF 02/27/98
   VERY LOW: $18,500   LOW: $29,600   MODERATE: $35,100   MEDIAN: $37,000

3. HOUSEHOLD AND INCOME INFORMATION - TO BE COMPLETED BY THE BORROWER. COMPLETE THE FOLLOWING FOR BORROWER, CO-BORROWER, AND ALL ADULT MEMBERS OF THE HOUSEHOLD WHO WILL RECEIVE INCOME.

```
                         PLANNED INCOME
                         NEXT 12 MONTHS

NAME                AGE  WAGES   OTHER   NAMES & ADDRESSES OF SOURCES OF INCOME
------------------- ---  -----   -----   --------------------------------------
KATHERINE A MAY      38  16,120    0     PORTLAND FORGE EFCU, P.O. BOX 608
KATHERINE A MAY       0      0     0     PORTLAND, IN 47371
                      0      0     0
                      0      0     0
```
NUMBER OF DEPENDENTS (NOT INCLUDING FOSTER CHILDREN) RESIDING IN DWELLING  2
ANNUAL REAL ESTATE TAXES             (DWELLING ONLY)       219.78
ANNUAL PROPERTY INSURANCE PREMIUM (DWELLING ONLY)       211.00

SIGNATURES OF BORROWERS: I (WE) CERTIFY THAT HOUSEHOLD AND FINANCIAL INFORMATION SUBMITTED TO RURAL HOUSING SERVICE IS CORRECT TO THE BEST OF MY (OUR) KNOWLEDGE AND HAVE READ AND UNDERSTOOD THE REQUIREMENTS AND CONDITIONS ON PAGES 2 AND 3 OF THIS AGREEMENT.

NOTICE: FAILURE TO DISCLOSE ACCURATE AND TRUTHFUL FINANCIAL INFORMATION MAY RESULT IN THE TERMINATION OF PROGRAM ASSISTANCE CURRENTLY BEING RECEIVED, AND THE DENIAL OF FUTURE PROGRAM ASSISTANCE.

WARNING: SECTION 1001 OF TITLE 18, UNITED STATES CODE, PROVIDES: "WHOEVER, IN ANY MATTER WITHIN THE JURISDICTION OF ANY DEPARTMENT OR AGENCY OF THE UNITED STATES KNOWINGLY AND WILLFULLY FALSIFIES, CONCEALS OR COVERS UP BY ANY TRICK, SCHEME, OR DEVICE A MATERIAL FACT, OR MAKES ANY FALSE, FICTITIOUS OR FRAUDULENT STATEMENTS OR REPRESENTATIONS, OR MAKES OR USES ANY FALSE WRITING OR DOCUMENT KNOWING THE SAME TO CONTAIN ANY FALSE, FICTITIOUS OR FRAUDULENT STATEMENT OR ENTRY, SHALL BE FINED UNDER THIS TITLE OR IMPRISONED NOT MORE THAN FIVE YEARS, OR BOTH."

```
9/4/98             /s/ Katherine A. May
--------           --------------------------         --------------------
 (DATE)                  (BORROWER)                       (CO-BORROWER)
                     Katherine A. May
```

**EXHIBIT B**

```
FORM RECD 1944-14                                                          PAGE 2
                    UNITED STATES DEPARTMENT OF AGRICULTURE
                             RURAL HOUSING SERVICE
              PAYMENT ASSISTANCE/DEFERRED MORTGAGE ASSISTANCE AGREEMENT
     -----------------------------------------------------------------
 4.  INCOME & PAYMENT CALCULATIONS-TO BE COMPLETED BY RHS OFFICIAL OR DESIGNEE.

     TOTAL ANNUAL INCOME   16,120.00
     DEDUCTIONS                960.00
     ADJUSTED ANN INCOME   15,160.00

     ADJUSTED ANNUAL INCOME EQUALS   40.97 % OF MEDIAN INCOME
     EQUIVALENT RATE OF INTEREST IS    1.0000 %

     MONTHLY INSTALLMENT BASED ON EQUIVALENT RATE OF INTEREST       151.26
     MONTHLY REAL ESTATE TAX PAYMENT                                 18.32
     MONTHLY PROPERTY INSURANCE PAYMENT                              17.58
     TOTAL PITI BASED ON EQUIVALENT RATE OF INTEREST                187.16

     ADJUSTED INCOME X 22% / 12                                     277.93
     MONTHLY NOTE RATE INSTALLMENT                                  304.56
     MONTHLY PAYMENT                                                242.04
     MONTHLY PAYMENT ASSISTANCE                                      62.52


 5.  SUBJECT TO THE PROVISIONS OF THIS AGREEMENT,  THE BORROWER WILL PAY   242.04
     DOLLARS PER MONTH FOR 12 MONTHS BEGINNING   11/00/98.  THIS AGREEMENT MAY BE
     REVISED OR CANCELED AS PROVIDED BY THE CONDITIONS LISTED ON PAGE 3 OF
     THIS AGREEMENT.
```

PUBLIC REPORTING BURDEN FOR THIS COLLECTION OF INFORMATION IS ESTIMATED TO
AVERAGE 20 MINUTES PER RESPONSE, INCLUDING THE TIME FOR REVIEWING INSTRUCTIONS,
SEARCHING EXISTING DATA SOURCES, GATHERING AND MAINTAINING THE DATA NEEDED, AND
COMPLETING AND REVIEWING THE COLLECTION OF INFORMATION.  SEND COMMENTS REGARDING
THIS BURDEN ESTIMATE OR ANY OTHER ASPECT OF THE COLLECTION OF INFORMATION,
INCLUDING SUGGESTIONS FOR REDUCING THIS BURDEN, TO DEPARTMENT OF AGRICULTURE,
CLEARANCE OFFICE, OIRM ROOM 404-W, WASHINGTON, D.C. 20250, AND TO THE OFFICE OF
MANAGEMENT AND BUDGET, PAPERWORK REDUCTION PROJECT (OMB NO. 0575-0059),
WASHINGTON, D.C. 20503.

```
FORM RECD 1944-14                                                        PAGE 3
                    UNITED STATES DEPARTMENT OF AGRICULTURE
                              RURAL HOUSING SERVICE
             PAYMENT ASSISTANCE/DEFERRED MORTGAGE ASSISTANCE AGREEMENT
             ---------------------------------------------------------
```

6. DEFERRED PAYMENT CALCULATIONS
   DATE OF INITIAL DEFERRED PAYMENT AGREEMENT: 00/00/00

   | | | | |
   |---|---|---|---|
   | ANNUAL NOTE PAYMENT AT 1% | $0.00 | TOTAL ANNUAL INCOME X 29% | $0.00 |
   | ANNUAL REAL ESTATE TAXES | $0.00 | | |
   | ANNUAL PROPERTY INSURANCE | $0.00 | MONTHLY DEFERRED PAYMENT | $0.00 |
   | ANNUAL PITI | $0.00 | MONTHLY DEFERRED ASSISTANCE | $0.00 |

7. AS REQUESTED BY THE GOVERNMENT, THE BORROWER WILL SUBMIT TO THE GOVERNMENT, IN A FORM PRESCRIBED OR APPROVED BY IT, A STATEMENT OF THE BORROWER'S TOTAL ANNUAL INCOME AND EXPENSES FOR THE PREVIOUS CALENDAR YEAR OR OTHER DESIGNATED PERIODS.

8. THE GOVERNMENT MAY REVIEW THE BORROWER'S ANNUAL INCOME AND EXPENSES DURING THE TERM OF THIS AGREEMENT AND, IN ACCORDANCE WITH ITS REGULATIONS, MAY AT ITS DISCRETION INCREASE, DECREASE, OR CANCEL ANY AMOUNT OF PAYMENT ASSISTANCE OR DEFERRED MORTGAGE ASSISTANCE GRANTED UNDER THIS AGREEMENT. THE GOVERNMENT MAY ALSO DETERMINE WHETHER TO OFFER A NEW AGREEMENT FOR THE SUCCEEDING YEAR OR OTHER SELECTED PERIOD FOLLOWING THE PERIOD COVERED BY THIS AGREEMENT.

9. AT ITS OPTION, THE GOVERNMENT MAY TERMINATE THIS AGREEMENT AT ANY TIME IT DETERMINES THAT:
   A. THE BORROWER HAS DEFAULTED UNDER ANY TERMS OR CONDITIONS OF THIS AGREEMENT, THE NOTE, OR ANY INSTRUMENT SECURING THE BORROWER'S LOAN OBLIGATIONS.
   B. THE BORROWER HAS NEVER OCCUPIED THE DWELLING AND RHS WILL NOT CONTINUE THE LOAN.
   C. THE BORROWER CEASES TO OCCUPY THE DWELLING.
   D. THE PROPERTY SECURING THE LOAN OBLIGATION HAS BEEN SOLD OR THE TITLE TRANSFERRED WITHOUT THE GOVERNMENT'S CONSENT OR APPROVAL.
   E. THE BORROWER IS NO LONGER ELIGIBLE FOR PAYMENT ASSISTANCE OR DEFERRED MORTGAGE ASSISTANCE.

10. DEFERRED PAYMENTS CANNOT BE GRANTED AFTER 15 YEARS FROM THE EFFECTIVE DATE OF THE INITIAL PAYMENT ASSISTANCE AGREEMENT. ALL DEFERRED PAYMENTS OUTSTANDING AT THE TIME THE PROPERTY IS SOLD OR TITLE TRANSFERRED ARE SUBJECT TORECAPTURE.

11. THE GOVERNMENT MAY AMEND OR CANCEL THE AGREEMENT AND COLLECT ANY AMOUNT OF REDUCTION GRANTED WHICH RESULTED FROM INCOMPLETE OR INACCURATE INFORMATION, AN ERROR IN COMPUTATION, OR ANY OTHER REASONS WHICH RESULTED IN PAYMENT ASSISTANCE OR DEFERRED MORTGAGE ASSISTANCE THAT THE BORROWER WAS NOT ENTITLED TO RECEIVE.

12. UPON THE FAILURE OF THE BORROWER TO MAKE THE PAYMENTS PRESCRIBED IN THIS AGREEMENT, THE GOVERNMENT, AT ITS OPTION AND SUBJECT TO ITS REGULATIONS, MAY DECLARE THE ENTIRE INDEBTEDNESS DUE TO THE GOVERNMENT IMMEDIATELY DUE AND PAYABLE.

13. NO TERMS OR CONDITIONS OF THE NOTE OR ANY RELATED SECURITY INSTRUMENT, OTHER THAN THE AMOUNT OF PAYMENT OR THE PAYMENT PLAN, SHALL BE AFFECTED BY THIS AGREEMENT.

14. THIS AGREEMENT IS SUBJECT TO THE PRESENT REGULATIONS OF RHS AND TO ITS FUTURE REGULATIONS NOT INCONSISTENT WITH THE EXPRESS PROVISIONS OF THIS AGREEMENT.

15. FOR LOANS APPROVED OR ASSUMED ON OR AFTER OCTOBER 1, 1979, ANY PAYMENT ASSISTANCE GRANTED AS A RESULT OF THIS AGREEMENT SHALL BE SUBJECT TO RECAPTURE BY THE GOVERNMENT WHEN THE PROPERTY SECURING THE LOAN IS SOLD, TITLE TO IT IS TRANSFERRED, OR WHEN IT IS NO LONGER OCCUPIED BY THE BORROWER.

16. IF THE DECISION CONTAINED IN THIS FORM RESULTS IN DENIAL, REDUCTION, OR CANCELLATION OF RHS ASSISTANCE, THE BORROWER MAY APPEAL THE DECISION AND HAVE A HEARING OR MAY REQUEST A REVIEW IN LIEU OF A HEARING.

RECEIVED FOR RECORD
13:32 o'clock P M
D.C. 9803312 Page 1-7

SEP 04 1998

*Judith L. Masters*
Recorder, Jay County

---

| Form RD 3550-14 IN | [Space Above This Line For Recording Data] | Form Approved |
| (4-98) | | OMB No. 0575-0172 |

United States Department of Agriculture
Rural Housing Service

## MORTGAGE FOR INDIANA

THIS MORTGAGE ("Security Instrument") is made on September 4, 1998. [Date]
The mortgagor is Katherine A. May ("Borrower").
This Security Instrument is given to the United States of America acting through the Rural Housing Service or successor agency, United States Department of Agriculture ("Lender"), whose address is Rural Housing Service, c/o Centralized Servicing Center, United States Department of Agriculture, P.O. Box 66889, St. Louis, Missouri 63166.

Borrower is indebted to Lender under the following promissory notes and/or assumption agreements (herein collectively called "Note") which have been executed or assumed by Borrower and which provide for monthly payments, with the full debt, if not paid earlier, due and payable on the maturity date:

| Date of Instrument | Principal Amount | Maturity Date |
| --- | --- | --- |
| Sept. 4, 1998 | $ 51,000.00 | Sept. 4, 2031 |

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the property covered by this Security Instrument; (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note, and (d) the recapture of any payment assistance and subsidy which may be granted to the Borrower by the Lender pursuant to 42 U.S.C. § 1472(g) or 1490(a). For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in Jay County, Indiana:

[See attached Exhibit A for Legal Description]

which has the address of
[Street]                    [City]              , Indiana    [ZIP]
("Property Address");

---

*According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0575-0172. The time required to complete this information collection is estimated to average 15 minutes per response, including the time for reviewing instruction, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.*

Initials _____ _____

Page 1 of 6
# 9803312
PAGE 1

RECEIVED SEP 2 4 1998

EXHIBIT C

PAGE 2

## EXHIBIT A

## REAL ESTATE DESCRIPTION

Lot Fifty-six (56) in Haynes Addition to the town, now City of Portland, Indiana.

Also, the North one-half (1/2) of alley located to the south of and adjacent to said Lot Fifty-six (56).

Subject to all visible and/or recorded roadways, easements, rights of way, restrictions, reservations, conditions and covenants.

PAGE 2

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures which now or hereafter are a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.
2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; and (d) yearly flood insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law or federal regulation that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held by a federal agency (including Lender) or in an institution whose deposits are insured by a federal agency, instrumentality, or entity. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If Lender shall acquire or sell the Property after acceleration under paragraph 22, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law or Lender's regulations provide otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied in the following order of priority: (1) to advances for the preservation or protection of the Property or enforcement of this lien; (2) to accrued interest due under the Note; (3) to principal due under the Note; (4) to amounts required for the escrow items under paragraph 2; (5) to late charges and other fees and charges.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Lender has agreed in writing to such lien or Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days

Initials _____  _____                                                                                                                    Page 2 of 6

of the giving of notice.

Borrower shall pay to Lender such fees and other charges as may now or hereafter be required by regulations of Lender, and pay or reimburse Lender for Lender's fees, costs, and expenses in connection with any full or partial release or subordination of this instrument or any other transaction affecting the property.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurer providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, at Lender's option Lender may obtain coverage to protect Lender's rights in the Property pursuant to paragraph 7.

All insurance policies and renewals shall be in a form acceptable to Lender and shall include a standard mortgagee clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within thirty (30) days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The thirty (30) day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If after acceleration the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Preservation, Maintenance, and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall maintain the improvements in good repair and make repairs required by Lender. Borrower shall comply with all laws, ordinances, and regulations affecting the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender is not required to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Refinancing.** If at any time it shall appear to Lender that Borrower may be able to obtain a loan from a responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes, Borrower will, upon the Lender's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby in full.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the

Initials _____ _____                                                                                     Page 3 of 6

fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured hereby immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within thirty (30) days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower and any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable. This instrument shall be subject to the present regulations of Lender, and to its future regulations not inconsistent with the express provisions hereof. All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

**15. Borrower's Copy.** Borrower acknowledges receipt of one conformed copy of the Note and of this Security Instrument.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is leased for a term greater than three (3) years, leased with an option to purchase, sold, or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.

**17. Nondiscrimination.** If Borrower intends to sell or rent the Property or any part of it and has obtained Lender's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower, will refuse to negotiate for the sale or rental of the Property or will otherwise make unavailable or deny the Property to anyone because of race, color, religion, sex, national origin, handicap, age, or familial status, and (b) Borrower recognizes as illegal and hereby disclaims and will not comply with or attempt to enforce any restrictive covenants on dwelling relating to race, color, religion, sex, national origin, handicap, age or familial status.

**18. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 13 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made.

**19. Uniform Federal Non-Judicial Foreclosure.** If a uniform federal non-judicial foreclosure law applicable to foreclosure of this security instrument is enacted, Lender shall have the option to foreclose this instrument in accordance with such federal procedure.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the Property. The preceding sentence shall not apply to the presence, use, or storage on the Property of small quantities of hazardous substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any federal, state, or local environmental law or regulation.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations.

As used in this paragraph "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "environmental law" means federal laws and regulations and laws and regulations of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**21. Cross Collateralization.** Default hereunder shall constitute default under any other real estate security instrument held by Lender and executed or assumed by Borrower, and default under any other such security instrument shall constitute default hereunder.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. SHOULD DEFAULT** occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent or make an assignment for the benefit of creditors, the Lender, at its option, with or without notice may: (a) declare the entire amount unpaid under the Note and any indebtedness to the Lender hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the Property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the Property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future law.

**23.** The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Lender secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Lender's option, any other indebtedness of Borrower owing to the Lender, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the Property, the Lender and its agents may bid and purchase as a stranger and may pay the Lender's share of the purchase price by crediting such amount on any debts of Borrower owing to the Lender, in the order prescribed above.

**24.** Borrower agrees that the Lender will not be bound by any present or future state laws prescribing any statute of limitations or limiting the conditions which the Lender may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such state laws. Borrower hereby waives, to the fullest extent Borrower may lawfully do so under state law, the benefit of all state laws (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, or (c) allowing any right of redemption or possession following any foreclosure sale. Borrower also hereby relinquishes, waives and conveys all rights, inchoate or consummate, of descent, dower, curtesy, and homestead.

**25. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box]

☐ Condominium Rider    ☐ Planned Unit Development Rider    ☐ Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 6 of this Security Instrument and in any rider executed by Borrower and recorded with this Security Instrument.

_Katherine A. May_ _____(Seal)
*Katherine A. May                Borrower

_____(Seal)
*                                 Borrower

Initials ____  ____

Page 5 of 6

PAGE ___6___

## ACKNOWLEDGMENT

STATE OF INDIANA      )
                     } ss:
COUNTY OF   JAY      )

Before me, ___William W. Hinkle_____, a Notary Public, this ___4th___ day of _Sept., 1998_, ___Katherine A. May___ and _____ acknowledged the execution of the annexed mortgage.

(SEAL)

\* _____William W. Hinkle_____  _____
                                       Notary Public

_____Jay County, Indiana_____
County and State of Residence

My commission expires __Jan. 1, 1999_____

*Print, stamp or typewrite the names of the mortgagors and the notary just beneath their signatures.

**Preparer's Statement**
The form of this Mortgage was prepared by the Office of the General Counsel, United States Department of Agriculture and the material in the blank spaces was inserted by or under the direction of:

__William W. Hinkle_____
(Name) 121 West High Street
Portland, Indiana  47371
(Address)

(Signature)

Initials ___  ___

# 9803312  Page 6 of 6

PAGE __7__